UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRADY H.,[1]

                                 Plaintiff,

v.                                                               **DECISION AND ORDER**

                                          1:20-cv-00877 (JJM)

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff, a minor at this time his claim was filed, was not entitled to Supplemental Security income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [14, 15].[2] The parties have consented to my jurisdiction [16]. Having reviewed their submissions [14, 15, 17], plaintiff's motion is granted.

## BACKGROUND

        The parties' familiarity with the 1,152-page administrative record [12] is presumed. Further, the parties have comprehensively set forth in their papers plaintiff's treatment

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination (upper right corner of the page).

history and the relevant medical evidence. Accordingly, I reference below only those facts necessary to explain my decision.

Plaintiff's mother filed applications for benefits on his behalf in January 2012 and May 2013, when plaintiff was 11 and 12 years old (he was born in November 2000), alleging a disability beginning on September 7, 2007, due to autism, Attention Deficit Hyperactivity Disorder ("ADHD"), and Pervasive Development Disorder[3] ("PDD"). Administrative Record [12] at 77, 83, 152, 159, 200. On July 21, 2016, Administrative Law Judge ("ALJ") Joan Deans issued a decision finding that plaintiff had not been disabled as defined in the Social Security Act since the date of his application. Id. at 8. On April 1, 2019, this court remanded this matter pursuant to the parties' stipulation for remand. Id. at 595-96. The Appeals Council then remanded this case for an ALJ to consider the opinions of:

1. State agency psychological consultant L. Hoffman[4] that plaintiff had a marked limitation in the domain of acquiring and using information;

2. School psychologists Cindy Davenport and Katrina Cummings that plaintiff's "significant delay in social skills and language skills, as well as, attentional concerns which interfere with participation in age appropriate activities"; and

3. Teacher Season Brigham, who opined plaintiff had "a serious or very serious problem in several domains of mental functioning including acquiring and using information and attending and completing tasks".

Id. at 600-601.

An administrative hearing was held on February 20, 2020 before ALJ Timothy M. McGuan. Id. at 474-495 (transcript of hearing). At that time, plaintiff was 19 years old. Id. at

---

[3] "Individuals with a well-established DSM-IV diagnosis of . . . pervasive developmental disorder not otherwise specified should be given the diagnoses of autism spectrum disorder" under the DSM-V. Centers for Disease Control and Prevention, Autism Spectrum Disorder (ASD), Diagnostic Criteria, https://www.cdc.gov/ncbddd/autism/hcp-dsm.html (last accessed February 15, 2022).

[4] Dr. Hoffman's first name does not appear in the record.

477.[5]  Plaintiff, who was represented by an attorney, testified.  Id. at 477-90.  At the hearing, plaintiff's attorney clarified that the hearing was "more applicable to the children's claim more so than the adult claim".  Id. at 480.

On March 13, 2020, ALJ McGuan issued a decision finding that plaintiff was not disabled prior to November 9, 2018 (the day he turned 18 years old), or through the date of his decision.  Id. at 521.  To reach that determination, ALJ McGuan found that plaintiff's severe impairments were speech and language delays, ADHD and PDD.  Id. at 504. ALJ McGuan went on to find that none of plaintiff's severe impairments met, or were medically equivalent to the severity of, a listed impairment.  Id., p. 504-505.  He found that, prior to plaintiff's turning 18 years old, his impairments did not functionally equal the severity of the listings.  Id. at 505-17. ALJ McGuan further concluded that, since plaintiff turned 18 and given his residual functional capacity, there were jobs in significant numbers in the national economy that plaintiff has been able to perform, such as cafeteria attendant, racker, and routing clerk.[6]  Thereafter, this action ensued.

## DISCUSSION

In seeking remand for further administrative proceedings, plaintiff argues, *inter alia*, that ALJ McGuan erred by failing to analyze the opinion of Ms. Brigham, by cherry-picking evidence of his improvements, by copying ALJ Deans' prior analysis with respect to most functional domains, and by ignoring additional evidence that he submitted following ALJ

---

[5]  ALJ McGuan explained that due to plaintiff turning age 18 on November 9, 2018, he "adjudicated this case under the Childhood Disability Standard and under the Adult Standard of Disability".  Administrative Record [12] at 499.

[6]  Plaintiff does not challenge this finding.

Deans' 2016 decision in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. Plaintiff's Memorandum of Law [14-1] at 17-25. Plaintiff argues further that ALJ McGuan erred by failing to explain why the opinion of consultative speech/language pathologist Dawn Grasso-Megyeri that plaintiff had a severe expressive language delay consistent with his allegations did not support a marked limitation in the domains of acquiring and using information and interacting with and relating to others, despite allocating significant weight to her opinion. Id. at 25-29. Because I agree that ALJ McGuan failed to adequately explain his rejection of evidence supporting greater limitations in the domains of acquiring and using information, and attending and completing tasks, and cherry-picked evidence from the record supporting only his conclusion that plaintiff had less than marked limitations in these domains prior to turning age 18, I remand this matter for further proceedings.

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). "For SSI applications, the relevant period is between the date of the application and the date of the ALJ's decision". Leisten v. Astrue, 2010 WL 1133246, *1, n. 2 (W.D.N.Y. 2010). Accordingly, the issue here is whether plaintiff was disabled between January 2012 and November 9, 2018, the day he turned 18.

B.     **Infant Disability Standard**

A claimant under 18 years of age is "disabled" under the Social Security Act if he has a medically determinable physical or mental impairment (or combination of impairments) that results in "marked and severe functional limitations . . . which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §1382c(a)(3)(C). Under the applicable regulations, plaintiff must show that he is not working, that he has a "severe" impairment or combination of impairments, and that the impairment or combination of impairments is of listing-level severity - *i.e.*, medically or functionally equal to the severity of a listed impairment. 20 C.F.R. §§416.924(a)-(d).

Functional equivalence of limitations in children is evaluated in six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. §§416.926a(b)(1)(i)-(vi). Marked limitations in two domains of functioning or an extreme limitation in one domain constitutes a functional equivalent to a listed impairment. Id. §416.926a(d). The Order of the Appeals Council targets three functional domains for further consideration:  acquiring and using information, interacting with others, and attending and completing tasks. *See* Administrative Record [12] at 600.

The SSA's regulations discuss the functional elements of each domain and describe the abilities assessed under each to determine if a child has a marked or extreme limitation, and provides some examples of possible limitations under each domain. *See* 20 C.F.R. §416.926a. A "marked" limitation in any domain exists when a claimant's "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." Id. §416.926a(e)(2)(i). A marked limitation "is the equivalent of the

functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean". Id.

The domain of acquiring and using information encompasses learning and thinking, including learning to "read, write, do arithmetic, and understand and use new information" and applying and using the information you have learned. Id. §§416.926a(g)(1)(1) – (ii). Children aged 6 to 12 "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others". Id. §416.926a(g)(2)(iv). Children aged 12 to 18 "should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas)". Id. §416.926a(g)(2)(v). Examples of limited functioning in this domain include "difficulty solving mathematics questions or computing arithmetic answers" and "talk[ing] only in short, simple sentences and hav[ing] difficulty explaining what you mean". Id. §§416.926a(g)(iv)-(v).

The domain of attending and completing tasks encompasses how well a child is "able to focus and maintain [his] attention" and how well he or she is able to "begin, carry through, and finish" activities, "including the pace" at which he or she performs activities and the ease with which he or she transitions between activities. Id. §416.926a(h). Children aged 6 to 12 "should be able to focus [their] attention in a variety of situations in order to follow directions, remember and organize [their] school materials, and complete classroom and homework assignments". Id. §416.926a(h)(2)(iv). Children aged 12 to 18 "should be able to pay attention to increasingly longer presentations and discussions, maintain . . . concentration while reading textbooks, and independently plan and complete long-range academic projects".

They should "also be able to organize [their]materials and to plan [their] time in order to complete school tasks and assignments". Id. §416.926a(h)(2)(v).  Children with a limitation in this domain may, for example, "require extra supervision to keep [them] engaged in an activity". Id. §416.926a(h)(3).

       **C.     ALJ McGuan's Analysis of Plaintiff's Functional Limitations is Not Supported by Substantial Evidence**

"Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony . . . we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor".  Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983).  Furthermore, an ALJ may not "cherry pick" only the evidence that supports his findings while ignoring conflicting evidence from the same source.  Carisma A. o/b/o T.A. v. Commissioner, 516 F.Supp.3d 301, 306 (W.D.N.Y. 2021).  " 'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both".  Younes v. Colvin, 2015 WL 1524417, *8 (N.D.N.Y. 2015).  Such a "selective reading and mischaracterization of the record does not constitute substantial evidence".  Shaine J. v. Commissioner, 2020 WL 6887622, *4 (W.D.N.Y. 2020).

I disagree with the Commissioner that this amounts to simply re-weighing the evidence.  See Commissioner's Brief [15-1] at 27.  "By highlighting this issue, the Court does not intent to supplant its interpretation of the record for the ALJ's.  While the Court should not engage in weighing the credibility of evidence or review the underlying matter *de novo*, the court is required to ensure that the ALJ has satisfied his legal duty." Bradley o/b/o Y.T.B. v Berryhill, 305 F.Supp.3d 460, 464 (W.D.N.Y. 2018).  For the reasons stated below, ALJ McGuan did not satisfy that duty.

In addition to the analysis copied from the July 2016 Decision, ALJ McGuan cited the following evidence when he considered plaintiff's functional limitations:

- Plaintiff's January 16, 2019 IEP for the 2018-2019 school year, when plaintiff was in 12th grade (Administrative Record [12] at 508-09, 848-60);

- Treatment notes from plaintiff's primary care provider dated March 29, 2019, November 25, 2013, and February 2014 through December 2015 (id. at 509, 1143-46, 365-67, 374-428, 430-37);

- Dr. Hoffman's November 26, 2013 opinion, to which ALJ McGuan assigned "partial" weight (id. at 509, 65-67);

- Ms. Brigham's November 1, 2013 Teacher Questionnaire, to which ALJ McGuan assigned "some" weight (id. at 510, 211-18);

- Ms. Davenport's December 19, 2012 Psychological Evaluation/Report, to which ALJ McGuan assigned "some" weight (id. at 510, 234-372, 262-65);

- Ms. Cummings' January 22, 2016 Psychoeducational Evaluation Report, to which ALJ McGuan assigned "significant" weight (id. at 511, 452-57); and

- Ms. Grasso-Megyeri's April 21, 2012 Speech and Language Evaluation Report, to which ALJ McGuan assigned "significant" weight (id. at 511, 287-90).

ALJ McGuan discussed each of these items in his analysis. However, his conclusions are the result of cherry-picking evidence from the record without adequately explaining why the evidence he discounted - or in some cases ignored - does not support a finding of more significant limitations in the domains of acquiring and using information, and attending and completing tasks. Accordingly, his conclusions are not supported by substantial evidence. Because I agree with plaintiff that ALJ McGuan did not properly support his conclusions under these two domains, remand is required. Accordingly, I do not reach plaintiff's remaining arguments. See Shaine J. v. Commissioner, 2020 WL 68887622, *5 (W.D.N.Y. 2020).

ALJ McGuan's discussion of plaintiff's individualized education programs ("IEP") demonstrates his cherry-picking of the evidence. For example, he cited the results of January 2019 intelligence and achievement testing outlined in plaintiff's 2018-2019 IEP showing "average" and "high average" scores in some academic areas. *See* Administrative Record [12] at 509, referring to plaintiff's January 16, 2019 IEP at 848-60. Plaintiff was in 12th grade at the time. Id. However, he did not acknowledge that the same achievement tests reported "low average" scores in areas of "calculation", "math calculation skills", "passage comprehension", "reading", and "reading comprehension". Id. at 850.

Because ALJ McGuan did not acknowledge the "below average" testing results, he did not discuss whether plaintiff's scores represented any standard deviation below the mean. However, standardized test scores that are "at least two, but less than three, standard deviations below the mean" could be evidence of a marked limitation. 20 C.F.R. §416.926a(e)(2)(i). Moreover, while he noted that plaintiff's Official Transcript (incorrectly identified in the Decision as a "12th grade report card") shows grades in the 80s and 90s, he ignored the testing scores in the January 2019 IEP demonstrating that plaintiff was reading at a 7.8 grade level and doing math at a 7.6 grade level. Id. at 802, 850-51. Therefore, while ALJ McGuan recognized plaintiff's high achievement scores, he neglected to reconcile the fact that plaintiff's achievements were accomplished well below grade level.

ALJ McGuan's analysis of Dr. Cummings' January 2016 Psychoeducational Evaluation Report opinion "as expressed in an IEP for the 2015-2016 school year", to which he assigned "significant" weight, further demonstrates his impermissible cherry-picking of the record with respect to this functional domain. For example, while he notes that the IEP reported that plaintiff "is doing well" in English language arts, he fails to acknowledge the very next

sentence, "[i]t is a modified program". Id. at 460. Nor does he acknowledge that the same section of the IEP states that plaintiff, who was in ninth grade at the time, improved his reading score from a 3.2 grade level to 5.5 grade level according to one test, and to a "low to mid sixth grade level" according to another. Id. at 460. Plaintiff at the time was "still . . . struggling with comprehension" and "doesn't really understand inference and prediction questions". Id. He was "capable of writing a seven sentence paragraph on a topic". Id. In mathematics, plaintiff was "working on the Common Core Learning Standards at the fifth grade level". Id. at 461.

Analysis of plaintiff's standardized test scores and below-grade-level performance could affect the outcome of ALJ McGuan's analysis under this functional domain. The ability "to learn to read, write, do arithmetic, and understand and use new information" is central to functional ability in this domain. 20 C.F.R. §416.926a(g)(1)(i). Children between the ages of 12 and 18 "should be able to comprehend and express both simple and complex ideas using increasingly complex language". Id. §416.926a(g)(2)(v). Further, having "difficulty solving mathematics questions or computing arithmetic answers" may demonstrate limited functioning in this domain. Id. §416.926a(g)(3)(iv). The "fact that [a claimant] cannot function at grade level in a fundamentally important subject like mathematics, in spite of the highly structured and supporting environment of [his] special education program . . . strongly indicates a marked limitation in the 'acquiring and using information' domain". Smith ex rel. J.H. v. Colvin, 935 F.Supp.2d 496, 506 (N.D.N.Y. 2013). Accordingly, failure to discuss these scores was error.

ALJ McGuan's analysis of plaintiff's functional abilities in the domain of attending and completing tasks suffers from similar errors and is likewise not supported by substantial evidence. He noted that Ms. Brigham's November 2013 Teacher Questionnaire identified "very serious" problems with organizing his school materials and completing class and

homework assignments.  Administrative Record [12] at 213, 510.  In addition, Ms. Brigham indicated plaintiff had "serious" problems "[f]ocusing long enough to finish [an] assigned activity or task"  and "completing work accurately without careless mistakes".   ALJ McGuan noted that Ms. Brigham "had the opportunity to interact with the claimant on a daily basis as his teacher", but appeared to discount her opinion because she had, at the time, worked with the plaintiff "only for approximately two months".  Id. at 510.  He asserted that "the record does not support that the claimant has such severe functional limitations", citing, as an example, a November 25, 2013 treatment note from plaintiff's pediatrician, along with information repeated in treatment notes between February 2014 through December 2015.  Id. at 510.  However, he does not explain why he credits some information in the treatment notes over other information in the same notes, or why the information he credits is inconsistent with the limitations described by plaintiff's teacher.

        For example, he notes that the November 25, 2013 treatment note states that plaintiff's "parents and his teacher report[ed] that they had no concerns and that the claimant was off to a good start in the school year".  Id.  In addition, the treatment note states that plaintiff "was doing well with his attention and focus, and the school had made some adjustments to help him".  Id. at 510, 994.  Notably, plaintiff was taking medication (amphetamine/dextroamphetamine, known commercially as Adderall) to help him focus.  He saw his pediatrician approximately every 30 days between November 2013 and December 2015 in order for his doctor to monitor his response to the medication.  See id. at 994-1068, documenting office visits approximately every 30 days for medication refills.  Ms. Brigham made her observations that plaintiff continued to experience significant issues despite the fact

that plaintiff's medication was, according to his pediatrician, "working well" with no reported issues. Id. at 510, 994. ALJ McGuan does not acknowledge this context.

Cherry-picking is also evident in ALJ McGuan's analysis of plaintiff's treatment notes. For example, ALJ McGuan acknowledges that the treatment notes indicate that plaintiff has "frequent attacks" of symptoms, including loss of concentration, distractibility, and difficulty finishing tasks. ALJ McGuan appears to discount that statement by pointing out the comment in the same notes that "[a]ll is going well", without further explanation why he finds one statement persuasive, but not the other. Id. at 510. Nor does he explain why he finds the statements in plaintiff's pediatrician's records inconsistent with Ms. Brigham's observations when the statements are not necessarily inconsistent, especially when read in the context of plaintiff's conditions, treatment history, academic achievement, standardized test scores, and the support afforded to him through his IEP.

A proper analysis could be determinative of the ALJ's analysis of plaintiff's functional abilities in the domain of attending and completing tasks. The abilities to "maintain[ ] concentration", "filter out distractions" and "return to [a] task without other people having to remind you frequently to finish it" are central to functional ability in this domain. 20 C.F.R. §416.926a(h)(1)(i). Children between the ages of 12 and 18 "should be able to . . . organize [their] materials and plan [their] time to complete school tasks and assignments" and "maintain [their] attention on a task for extended periods of time". Id. §416.926a(h)(2)(v). Further, becoming "easily . . . distracted", "repeatedly becom[ing] sidetracked] and "requir[ing] extra supervision to keep you engaged in an activity" may demonstrate limited functioning in this domain. Id. §416.926a(h)(3)(i), (iii), and (v).

Although ALJ McGuan is not required to credit evidence in the record suggesting more significant functional limitations, plaintiff is entitled to know why he rejected it. Here, ALJ McGuan's analysis fell short of this standard and remand is required:

> Although the ALJ summarized the record and set forth the applicable statutory and regulatory standards in detail, he failed to apply those standards to the record with sufficient particularity. Accordingly, on remand, the ALJ must revisit the relevant domains of functioning, including but not limited to the domain of acquiring and using information, and render a new determination. In his new decision, the ALJ must justify any determination that claimant's impairments do not entitle him to benefits with sufficient specificity to permit meaningful review.

Bradley o/b/o Y.T.B. v. Berryhill, 305 F.Supp.3d 460, 464 (W.D.N.Y. 2018).

## CONCLUSION

For these reasons, the plaintiff's motion [14] is granted and this matter is remanded for further proceedings consistent with this opinion. The Commissioner's cross-motion [15] is denied.

**SO ORDERED**.

Dated: March 9, 2022

                                                  /s/ Jeremiah J. McCarthy
                                                  JEREMIAH J. MCCARTHY
                                                  United States Magistrate Judge